**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | 3:11-CR-0033 |
| JOSEPH P. DONAHUE, | (JUDGE CAPUTO) |
| Defendant. | |

## MEMORANDUM

Presently before me is Defendant Joseph Donahue's ("Donahue") Motion *in Limine*. (Docs. 279; 300.) In his motion, Donahue requests that he be permitted to introduce certain evidence and testimony at trial relating to his justification defense and defense that government agents planted a magazine and firearm in his automobile and belongings because they harbored bias and animosity towards him. For the reasons that follow, Donahue's motion *in limine* will be granted in part and denied in part.

### I. Background

On March 4, 2010, Donahue was convicted after a jury trial in the United States District Court for the Middle District of Pennsylvania of multiple federal offenses. On December 2, 2010, Donahue was sentenced to 121 months imprisonment. He was scheduled to surrender at the Federal Correctional Institution, Fort Dix, New Jersey, to commence serving his sentence on January 4, 2011.

On January 4, 2011, Donahue failed to appear at the institution designated for the service of his sentence. The United States Attorney's Office, Middle District of Pennsylvania, thereafter applied for, and obtained, a warrant for Donahue's arrest.

On January 20, 2011, Donahue was arrested by the United States Marshals Service in Las Cruces, New Mexico. Donahue's vehicle was taken to the U.S. Marshals' facility in Las Cruces, New Mexico, where the car was searched, pictures of the vehicle and its

contents were taken, and the contents of the car were inventoried pursuant to the United States Marshals Service Policy Directives. During a subsequent search of the vehicle, a Glock .40 caliber magazine with an extender was discovered in the automobile. Subsequently, the bags seized from Donahue's vehicle were opened and searched, and a Glock semi-automatic pistol was found.

On July 24, 2012, the Grand Jury returned the Four-Count First Superseding Indictment against Donahue. Specifically, Donahue was charged with: (1) knowingly failing to surrender for service of a federal sentence pursuant to a court order in violation of 18 U.S.C. § 3146(a)(2) and (b)(1)(A)(i) (Count One); (2) knowingly possessing, in and affecting commerce, a firearm (Glock, Model 27, .40 caliber semi-auto pistol, serial number GTB989) which had been shipped and transported in interstate and foreign commerce in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2) (Count Two); (3) being a fugitive from justice and knowingly possessing, in and affecting commerce, a firearm (Glock, Model 27, .40 caliber semi-auto pistol, serial number GRB989) which had been shipped and transported in interstate and foreign commerce, in violation of 18 U.S.C. §§ 922(g)(2) and 924(a)(2) (Count Three); and (4) knowingly possessing a stolen firearm (Glock, Model 27, .40 caliber semi-auto pistol, serial number GTB989) which had been shipped and transported in interstate and foreign commerce, knowing and having reasonable cause to believe the firearm was stolen in violation of 18 U.S.C. §§ 922(j) and 924(a)(2) (Count Four).

Thereafter, the Government filed a motion *in limine* to exclude evidence of alleged misconduct of others and evidence attacking the validity of Donahue's underlying felony conviction. (Doc. 255.) By Memorandum and Order dated December 12, 2014 (Docs. 264; 265), the Government's motion was granted in part and denied in part. Specifically, I granted the Government's motion to prevent Donahue from re-litigating his contention that

his underlying convictions were the product of unlawful or unconstitutional conduct in this case because those claims had already been raised and rejected before this Court and the Third Circuit. (Doc. 264, 5.) However, I denied the Government's motion in *limine* to the extent that it sought to preclude Donahue from introducing evidence supporting his defense that government agents harbored animosity against him, thus motivating those officials to plant and/or conspire to plant the magazine and firearm in his automobile and belongings. (*Id*.) In denying the Government's motion in that regard, I stated that "the admissibility of any evidence offered relating to this defense will be determined at the time of trial." (*Id*.) Moreover, the Government's motion *in limine* to preclude Donahue from presenting a justification defense was denied without prejudice. (*Id*. at 8.)

Following the issuance of the December 12, 2014 Memorandum and Order, Donahue filed the instant motion *in limine*. (Doc. 279.) Donahue seeks a pretrial determination on the admissibility of specific evidence he intends to offer at trial in support of his defense that government agents planted evidence in his vehicle and belongings. (Doc. 280, 2.) The Government filed a timely brief in opposition to the motion on February 18, 2015 (Doc. 283), and Donahue filed a reply brief in further support of his motion on March 3, 2015. Oral argument was held on the motion *in limine* on April 6, 2015. Thereafter, Donahue filed a brief clarifying the evidence he intends to submit at trial in support of his defense, (Doc. 300), and the Government filed a supplemental brief in opposition thereto. (Doc. 302.) Donahue's motion *in limine* is now ripe for disposition.

## II. Discussion

I previously stated that a ruling on the admissibility of specific evidence implicating Donahue's defenses would not be rendered until the time of trial. (Doc. 264, 5.) Donahue has since indicated that he "is unable to adequately plan a strategy for trial without the

benefit of pre-trial rulings" on his motion *in limine*. (Doc. 285, ¶ 5.) As such, I will outline the substance of testimony in support of Donahue's defenses that will be permitted at trial.[1]

First, though, I will briefly detail the evidence Donahue contends is necessary to the presentation of his defenses. The relevant events cited by Donahue include:

In the late 1980s, Donahue was convicted of crimes relating to his participation in a money laundering scheme. The prosecuting attorney in that case was Gordon Zubrod ("Zubrod"). During that time, Donahue publically criticized Zubrod, and he also "exposed to the press information which could prove to be permanently detrimental to Zubrod's career." (Doc. 300, ¶¶ 1-2.)

Years later, in May 2008, Donahue was indicted in the underlying case involving the crimes he was convicted of on March 4, 2010. The prosecuting attorney in that case was also Zubrod. According to Donahue, Zubrod enlisted FBI Special Agent Michael Baumgardner ("Baumgardner") to assist in the investigation and conviction of Donahue to enhance his career. Donahue insists that Zubrod had a personal vendetta against him, which caused Zubrod to manipulate Baumgardner during the course of the prosecution. Moreover, the Zubrod-Baumgardner alliance was the reason that Donahue was told during an interrogation by Baumgardner that "Gordon Zubrod says, 'Hello'." (Doc. 300, ¶ 3.)

Donahue's underlying case proceeded to trial. During that trial, on February 24, 2010, Zubrod accused Baumgardner of committing perjury. Baumgardner did not respond

---

[1] A criminal defendant's rights concerning the production of evidence are expansive, and "[a]mong them, as a fundamental element of due process, is the right to offer testimony of witnesses and to compel their attendance, if necessary, in support of a defense to criminal liability." *United States v. Cruz-Jiminez*, 977 F.2d 95, 100 (3d Cir. 1992) (citations omitted). The right to present evidence, however, "is not absolute." *Id*. (citing *Government of the V.I. v. Mills*, 956 F.2d 443, 445 (3d Cir. 1992)).

well to this accusation, and he apparently threatened to harm himself, causing a temporary shutdown of the courthouse. (*Id*. at ¶ 5.)

The next day, Zubrod, Baumgardner, Supervisory Agent Kevin Wevodau ("Wevodau"), and Special Agent April Phillips ("Phillips") had a meeting to discuss the claimed perjury. (*Id*. at ¶ 6.) It was decided that Baumgardner would not be put back on the stand at that meeting. (*Id*.) Baumgardner locked himself in a bathroom after learning of that decision, and he had to be coaxed out by Wevodau. (*Id*.)

Approximately eight months later, Zubrod confirmed the existence of an ongoing investigation of Baumgardner. (Doc. 284, 4.) At about the same time and in response to Donahue's motion for a new trial in his underlying case, Wevodau prepared an affidavit indicating that he became aware of the concerns that Baumgardner committed perjury during Donahue's trial. Donahue characterizes that affidavit as "misleading and not the whole truth" because it focused on events that took place on February 25, 2010 rather than those which occurred on February 24, 2010. (Doc. 284, 4.)

Donahue insists that these events support his justification defense and his defense that Government agents harbored animosity towards him motivating them to plant evidence in his automobile and belongings. Donahue sets forth a number of explanations as to the relevance of these events to his stated defenses.

First, Donahue argues that he intends to show "a long standing animosity of the Government to [him]." (Doc. 280, 3.) Additionally, Donahue intends to establish "that a confrontation occurred and that in fact S.A. Baumgardner issued threats and that the confrontation and its effects carried over from February 24, 2010 to at least February 25, 2010." (Doc. 279, ¶ 8.) As a result of the long history of animosity and events that occurred on February 24 and 25, 2010 at his underlying trial, Donahue intends to assert at trial that

Zubrod and others arranged "for the law enforcement owned firearm to be transported to New Mexico and planted in [his] bag by a sympathetic fellow FBI agent" in retaliation for destroying Baumgardner's career and embarrassing the FBI. (Doc. 300, ¶¶ 10-13.)

Second, Donahue argues that admission of the "Gordon Zubrod says, 'Hello'" statement is necessary because it "suggests that violence will be perpetrated upon the addressee" as it is a reference to "The Godfather." (Doc. 280, 3.) Donahue emphasizes that he will assert at trial that this evidence supports his fear that he was unable to safely surrender due to a fear of physical harm. (Doc. 284, 4-5.)

Third, Donahue asserts that the "Gordon Zubrod says, 'Hello'" message is "not the perjury that was actually at issue in the February 24, 2010 and February 25, 2010 confrontations between A.U.S.A. Zubrod and S.A. Baumgardner." (Doc. 284, 3.) Donahue contends that both Zubrod and Baumgardner "were well aware of the relevance and materiality of [the] false testimony," and disclosure of the actual facts of the perjury "will assist the jury in determining the existence of or extent of the [Government's] bias and ill will . . . ." (Doc. 300, ¶ 5.) Furthermore, because Zubrod confirmed the existence of an investigation of Baumgardner eight months after trial, Donahue reasons that this demonstrates that the investigation involved more than merely the "Hello" message. (Doc. 284, 4.)

Related to that issue is Donahue's contention that "accusations of perjury in his underlying trial are evidence of the Government's long standing animosity toward [him]" supporting his defense that the Government was motivated to plant evidence in his automobile and belongings. (Doc. 284, 3.) Donahue opines that the "mere suggestion of perjury" is evidence of the Government's ill will towards him and is relevant to his defense. (*Id*. at 4.) Moreover, because the Government did not disclose Baumgardner's conduct to

the defense at his underlying trial and Wevodau prepared an affidavit omitting "material events," Donahue intends to contend at trial that "these acts or failures to act imply ill will toward Donahue and imply motive to plant evidence to convict him in the instant trial." (Doc. 300, ¶¶ 7-8.) Similarly, Donahue opines that if a jury determines that the Wevodau affidavit was purposefully misleading, the jury "may well infer that Donahue's rantings of conspiracy and bias have gained legitimacy from the facts." (*Id*. at ¶ 9.)

To support these contentions, Donahue's motion *in limine* indicates that he will seek testimony and documents from the following witnesses: United States Attorney Peter Smith; Special Agent April Phillips; Wevadou; Zubrod; United States Marshal Martin Payne; Deputy U.S. Marshal Archuleta; FBI Special Agent Amy Willeke; and a number of court employees and other members of the United States Marshals Service that were in Scranton on February 24 and 25, 2010. (Doc. 279, ¶ 8.) Donahue has also filed a number of Motions for Subpoena and Duces Tecum for some of these witnesses, as well as from the Pennsylvania State Police and the Athens Borough Police Department. (Docs. 290-297.)

Donahue's motion *in limine* will be granted in part and denied in part.  In view of the defenses Donahue seeks to present at trial, Donahue will be allowed to present evidence regarding the "Gordon Zubrod says, 'Hello'" statement.  Donahue argues that this phrase is in reference to "The Godfather," and it "suggests that violence will be perpetrated upon the addressee." (Doc. 280, 3.) Donahue will not be precluded from presenting this evidence in support of his contention that he could not safely surrender for service of sentence.[2]

Additionally, Donahue will not be foreclosed from presenting evidence of his history with Zubrod or of the accusations of perjury by Government officials.  These events relate

---

[2]   But, as I previously noted, whether a jury instruction will be given on Donahue's justification defense will be determined after he has put on his case. (Doc. 264, 8.)

to Donahue's defense that his criticisms and repeated allegations of a Government conspiracy against him supplied a motive for Government agents to plant evidence in his automobile and belongings. As such, Donahue will be permitted to present evidence of his history with Zubrod. But, as previously indicated, Donahue will be prohibited from arguing that his prior convictions were unlawfully obtained by misconduct, fraud, deceit, or otherwise unconstitutional conduct.[3] Additionally, because Donahue's defense implicates allegations of ill will and bias that resulted out of the events that transpired during the course of his underlying trial, he will be allowed to present evidence relating to the February 24 and 25, 2010 events, such as the confrontation between Zubrod and Baumgardner, the meeting between Zubrod, Baumgardner, Wevadou, and Phillips, and Baumgardner's response to the allegations of perjury and being removed from the case. Although the connection between any negative publicity from these events (which occurred in this District) as a basis to plant evidence in Donahue's automobile and belongings in New Mexico by other agents is attenuated, in view of the circumstances in which the magazine and firearm were discovered, Donahue may present evidence, subject to limitation, of the February 24 and 25, 2010 events to support his defense that certain Government officials were motivated to conspire to plant the magazine and firearm in his automobile and belongings.[4]

---

[3] Significantly, and the Government's concerns notwithstanding (Doc. 302, 7), Donahue's prior criminal trial will not be re-litigated in this prosecution. As explained in the text, Donahue will only be permitted to present evidence regarding the allegations of perjury at his prior trial without exploring the content of the purported perjured testimony or arguing that he was convicted as a result of the perjured testimony.

[4] Donahue also suggests that as a result of the February 24 and 25, 2010 events, he was blamed for ruining Baumgardner's career. This, he explains, further motivated Government officials to conspire to plant evidence in his automobile and belongings. It is difficult to see how Donahue, rather than Baumgardner, could be blamed for the degradation, if any, of Baumgardner's career.

However, implicit in Donahue's submissions, and as made clear at oral argument on the motion *in limine*, is that he intends to call witnesses at trial to determine what statement(s) were made at his prior trial that caused Zubrod to have concerns that Baumgardner committed perjury. Donahue will be prohibited from using this trial to unearth what he believes was the "perjury that was actually at issue" in the confrontation between Zubrod and Baumgardner. (Doc. 284, 3.)

The content or basis of the perjured testimony, whether it was the "Hello" phrase or other testimony, is insignificant to Donahue's stated justification defense or his defense that government animosity towards him motivated agents to plant evidence in his automobile and belongings. Either Baumgardner's testimony at the prior trial was favorable to Donahue, which is likely because Zubrod was the prosecuting attorney seeking a conviction, or the testimony was unfavorable to Donahue. But in either case, assuming Baumgardner committed perjury, the content of the perjured statement is not germane to the issue of ill will or animus towards Donahue for purposes of his defenses in this case. In fact, it is unclear that establishing what statements constituted perjury would be helpful to Donahue. Instead, it is the allegation of perjury, rather than the actual content of the purported perjured statements, that are pertinent to Donahue's planted evidence defense. Indeed, evidence of the content of the alleged perjured testimony is no more than marginally relevant to Donahue's stated defenses, and its relevance is substantially outweighed by the danger that it would mislead the jury and confuse the issues. If Donahue is permitted to explore what in fact constituted the perjured statements in this case, the proceedings would digress from the issues central to this prosecution into "allegations with a nexus to the charges that [are] tangential at best." *United States v. Briston*, 192 F. App'x 84, 89 (3d Cir. 2006) (district court properly exercised its discretion in not allowing proposed testimony

because it had "the potential to confuse the jury and sidetrack the proceedings."). Furthermore, and as noted by the Government, allowing Donahue to explore the content and extent of the alleged perjured testimony would essentially result in the re-litigation of Donahue's 2010 trial. Also, Donahue's proposed evidence is highly prejudicial to Baumgardner, who is not on trial. Therefore, Donahue will be prohibited from presenting evidence in this case in an effort to determine what perjury "was actually at issue" in his underlying trial.

Lastly, with respect to witnesses identified by Donahue in his motion *in limine*, I will not address at this time whether he will be permitted to call all of these witnesses at trial. As noted, Donahue has filed a number of motions for subpoenas pursuant to Federal Rule of Criminal Procedure 17(b). Because these subpoenas were not filed *ex parte*, I will grant the Government's request to file an opposition to Donahue's motion for subpoenas within fourteen days from the date of entry of the accompanying order. (Doc. 299)

### III. Conclusion

For the above stated reasons, Donahue's motion *in limine* will be granted in part and denied in part.

An appropriate order follows.

April 22, 2015  /s/ A. Richard Caputo
Date  A. Richard Caputo
United States District Judge