**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | NO. 3:11-CR-33 |
| JOSEPH P. DONAHUE, | (JUDGE CAPUTO) |
| Defendant/Petitioner. | |

## MEMORANDUM

Presently before me is the Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (Doc. 465) filed by Joseph Donahue ("Donahue" or "Petitioner"). Donahue claims that his counsel labored at trial with a serious medical condition that left him "unconscious" and "in a stupor" during a substantial portion of the proceedings. Donahue further contends that his counsel failed to subpoena or call a crucial witness whose testimony would have changed the outcome of his trial. As a result, Donahue asserts that he was denied his Sixth Amendment right to effective assistance of counsel. Because Donahue fails to satisfy the standard for evaluating ineffective assistance claims set forth by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), his § 2255 motion will be denied.

## I. Background

On January 6, 2010, the Government filed a sixteen-count Second Superseding Indictment against Donahue in this Court. *See United States v. Donahue*, No. 08-CR-221 (M.D. Pa. Jan. 6, 2010), ECF No. 138.[1] That indictment contained charges of bank fraud, 18 U.S.C. § 1344; access device fraud (credit card fraud), 18 U.S.C. §§ 1029(a)(2), 1029(a)(2), 1029(b)(1) and 1029(b)(2); false statements to the government, 18 U.S.C. § 1001; and money laundering, 18 U.S.C. § 1956(a)(1)(A). *See id.*

---

[1] That case proceeded before the Honorable James M. Munley.

Following an eight-day trial, a jury convicted Donahue on all counts. *See United States v. Donahue*, 460 F. App'x 141, 142 (3d Cir. 2012).[2] Donahue was sentenced to a term of 121 months of imprisonment. *See id*. Donahue was scheduled to surrender at the Federal Correctional Institution, Fort Dix, New Jersey, to commence serving his sentence on January 4, 2011. *See United Stats v. Donahue*, No. 11-33, 2014 WL 6388446, at *1 (M.D. Pa. Nov. 14, 2014).

On January 4, 2011, Donahue failed to appear at the institution designated for the service of his sentence. *See id*. The United States Attorney's Office, Middle District of Pennsylvania, thereafter obtained a warrant for Donahue's arrest. *See id*.

On January 20, 2011, Donahue was arrested by the United States Marshals Service in Las Cruces, New Mexico. *See id*. Donahue's vehicle was taken to the U.S. Marshals' facility in Las Cruces, New Mexico, where the car was searched, pictures of the vehicle and its contents were taken, and the contents of the car were inventoried. *See id*. During a subsequent search of the vehicle, a Glock .40 caliber magazine with an extender was discovered in the automobile. *See id*. Subsequently, the bags seized from Donahue's vehicle were opened and searched, and a Glock semi-automatic pistol was found. *See id*.

On July 24, 2012, the Grand Jury returned the First Superseding Indictment against Donahue in this case. (*See* Doc. 111, *generally*). Donahue was charged with: (1) knowingly failing to surrender for service of a federal sentence pursuant to a court order in violation of 18 U.S.C. § 3146(a)(2) and (b)(1)(A)(i) (Count One); (2) knowingly possessing, in and affecting commerce, a firearm (Glock, Model 27, .40 caliber semi-auto pistol, serial number GTB989) which had been shipped and transported in interstate and foreign commerce in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2) (Count Two); (3) being a fugitive from justice and knowingly

---

[2] The Third Circuit affirmed Donahue's conviction on direct appeal. *See Donahue*, 460 F. App'x at 145.

2

possessing, in and affecting commerce, a firearm (Glock, Model 27, .40 caliber semi-auto pistol, serial number GRB989) which had been shipped and transported in interstate and foreign commerce, in violation of 18 U.S.C. §§ 922(g)(2) and 924(a)(2) (Count Three); and (4) knowingly possessing a stolen firearm (Glock, Model 27, .40 caliber semiauto pistol, serial number GTB989) which had been shipped and transported in interstate and foreign commerce, knowing and having reasonable cause to believe the firearm was stolen in violation of 18 U.S.C. §§ 922(j) and 924(a)(2) (Count Four). (*See id.*). Donahue proceeded to trial on the charges, where a jury convicted him of all counts on September 1, 2015. (*See* Doc. 378, *generally*).

Donahue appealed his conviction to the Third Circuit. (*See* Doc. 422, *generally*). The Third Circuit affirmed the judgment of conviction. *See United States v. Donahue*, 681 F. App'x 171, 174 (3d Cir. 2017). The Supreme Court denied Donahue's petition for writ of certiorari. *See Donahue v. United States*, 138 S. Ct. 128 (2017).

The following month, Donahue filed the instant § 2255 motion and supporting memorandum of law in this Court, wherein he raises two ineffectiveness assistance of counsel claims. (*See* Doc. 465, *generally*).[3] Donahue first asserts that he "was deprived of his Sixth Amendment right to counsel when counsel was not concious [sic] during a substantial portion of defendant's trial." (*Id*. at 4). Donahue summarizes this claim:

> Defense counsel, due to a post-trial discovered serious medical condition involving arterial blockage of bloodflow to the brain, was rendered effectively incapacitated at numerous and crucial times during the trial. The condition essentially rendered defense [counsel] unconcious [sic] to what was going on at times during the trial. Emergency surgery was completed following trial upon discovery of the condition.

---

[3] A *Miller* notice was sent to Donahue on November 21, 2017. (*See* Doc. 467, *generally*). Donahue elected to have his § 2255 motion ruled on as filed. (*See* Doc. 472, *generally*).

3

(*Id.*). Counsel was also ineffective, states Donahue, for "refus[ing] to call a crucial defense witness due to a personal relationship." (*Id.* at 5). Donahue explains the basis of this claim:

> Defense counsel refused to subpoena a crucial witness who defendant stressed could impact the trial outcome despite agreeing that the witness's testimony was of such importance because of the personal relationship between defense counsel and the witness - the presiding judge (James M. Munley) in the underlying related case. Defense counsel told defendant that he [would] quit if defendant demanded he subpoena the witness or requested that the court direct him to do so. Defense counsel stated that he would not do so because the judge was responsible for him becoming an attorney and accepted to the bar. He said that he would not subject this crucial witness to embarrassing public examination of conduct in the underlying case disclosed in newly discovered evidence, in government official reports including one by the prosecutor disclosing wrongful ex parte meetings and discussions, perjury and the withholding of relevant material evidence.

(*Id.*).

On February 10, 2018, the Government filed its brief in opposition to the § 2255 motion, (*see* Doc. 471, *generally*), and Donahue filed a timely reply thereto. (*See* Doc. 473, *generally*). Donahue's § 2255 motion is thus fully briefed and ripe for disposition.

## II. Legal Standards

**A.     28 U.S.C. § 2255.**

"Motions pursuant to 28 U.S.C. § 2255 are the presumptive means by which federal prisoners can challenge their convictions or sentences that are allegedly in violation of the Constitution." *Okereke v. United States*, 307 F.3d 117, 120 (3d Cir. 2002). Section 2255 permits a prisoner sentenced by a federal court to move the court that imposed the sentence to "vacate, set aside, or correct the sentence" where: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court was without jurisdiction to impose such sentence; (3) the sentence was in excess of the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack. *See* 28 U.S.C. § 2255(a).

Section 2255(b) generally entitles a petitioner to a hearing on his motion, "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief. . . ." 28 U.S.C. § 2255(b); *see also* Rule 4(b), Rules Governing Section 2255 Proceedings for the United States District Courts ("If it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion and direct the clerk to notify the moving party."). The threshold the petitioner must meet to obtain an evidentiary hearing is considered to be "reasonably low." *United States v. Booth*, 432 F.3d 542, 546 (3d Cir. 2005). In considering a § 2255 motion, the "district court must 'accept the truth of the movant's factual allegations unless they are clearly frivolous on the basis of the existing record.'" *Johnson v. United States*, 294 F. App'x 709, 710 (3d Cir. 2008) (quoting *Booth*, 432 F.3d at 545-46). The district court may, however, dispose of "vague and conclusory allegations" contained in a § 2255 petition without further investigation. *Id*. at 710 (quoting *United States v. Thomas*, 221 F.3d 430, 437 (3d Cir. 2000)).

**B.     Ineffective Assistance of Counsel.**

Among other protections, the Sixth Amendment to the United States Constitution guarantees an accused in a criminal prosecution "to have the assistance of counsel for his defense." U.S. Const. amend. VI. The applicable federal precedent for ineffective assistance claims is the well-settled two-prong test established by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

To establish he was denied the effective assistance of counsel under *Strickland*, the movant must show that (1) the performance of trial counsel fell below an objective standard of reasonableness, and (2) the performance of counsel unfairly prejudiced the defense. *Id.* at 687-88, 691, 104 S. Ct. 2052. "Both *Strickland* prongs must be satisfied." *George v. Sively*, 254 F.3d 438, 443 (3d Cir. 2001) (citing *United States v. Nino*, 878 F.2d 101, 104 (3d Cir. 1989)).

5

The first *Strickland* prong requires a defendant to "establish . . . that counsel's performance was deficient." *Jermyn v. Horn*, 266 F.3d 257, 282 (3d Cir. 2001). Proving a deficiency in conduct "'requires showing that counsel made errors so serious that counsel was not functioning as the counsel guaranteed defendant by the Sixth Amendment.'" *Id*. (quoting *Strickland*, 466 U.S. at 687, 104 S. Ct. 2052). "In assessing counsel's performance, 'every effort [must] be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.'" *Id*. (quoting *Strickland*, 466 U.S. at 689, 104 S. Ct. 2052).

"Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is to say, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 689, 104 S. Ct. 2052. The benchmark for judging any claim of ineffectiveness of counsel is "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id*.

The second prong of *Strickland* requires a defendant to show that counsel's performance unfairly prejudiced the defendant, meaning that counsel's errors were so serious as to deprive the defendant of a trial whose result is reliable. *Id*. at 687, 104 S. Ct. 2052. It is not enough to show that the error had some conceivable effect on the outcome of the proceeding, for virtually every act or omission would meet such a test. *Id*. at 693, 104 S. Ct. 2052. Rather, the defendant must show there is a reasonable probability that, but for counsel's unprofessional error, the result of the proceeding would have been different. *Id*. at 694, 104 S. Ct. 2052. A reasonable probability is sufficient to undermine confidence in the outcome of the trial. *Id*. The Third Circuit has stated that the "*Strickland* prejudice standard is not 'stringent'- it is, in fact, 'less demanding than the preponderance standard.'" *Williams v. Beard*, 637 F.3d 195, 227

6

(3d Cir. 2011) (quoting *Jermyn*, 266 F.3d at 282).

## III. Discussion

As stated, two claims are raised in the § 2255 motion. First, Donahue asserts that he was deprived of his Sixth Amendment right to counsel because his counsel was suffering with a serious medical condition that caused him to be unaware or "unconscious" during times at trial. Second, Donahue argues that his counsel was ineffective by failing to subpoena or call a crucial trial witness. I will address these arguments in turn.[4]

### A. Counsel's "Consciousness" At Trial.

Donahue first argues that he was deprived of his right to counsel because his counsel suffered with a condition that resulted in him being in a "medically caused stupor" during periods of time at trial. (*See* Doc. 465, 2-6). According to Donahue, "[a]t numerous points during the ongoing trial[,] counsel was clearly not cognizant or aware of the proceedings, failing to note, observe or take into account testimony while being in a state of obliviousness . . . ." (*See id*. at 2). In his reply, Donahue acknowledges that "[t]hroughout most of the trial defense counsel was a staunch advocate who had confidence in the righteousness of the defense." (Doc. 465, 2). Donahue further explains that during periods of trial where his counsel was "on his

---

[4] An evidentiary hearing is not required in this matter. 28 U.S.C. § 2255(b) requires an evidentiary hearing "unless the motion and files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b); *Booth*, 432 F.3d at 545; *United States v. Day*, 969 F.2d 39, 41-42 (3d Cir. 1992). "Where the record, supplemented by the trial judge's personal knowledge, conclusively negates the factual predicates asserted by the petitioner or indicate[s] that petitioner is not entitled to relief as a matter of law, no hearing is required." *Judge v. United States*, 119 F. Supp. 3d 270, 280 (D.N.J. 2015); *see also United States v. Tuyen Quang Pham*, 587 F. App'x 6, 8 (3d Cir. 2014); *Government of Virgin Islands v. Nicholas*, 759 F.2d 1073, 1075 (3d Cir. 1985); *Booth*, 432 F.3d at 546. Based on the record of this matter and my personal knowledge of the events that took place during the course of Donahue's trial, as well as for the reasons set forth in the text, Donahue's claims are without merit, and no hearing is required for the resolution of the instant § 2255 motion.

7

feet and moving about . . . [he] was effective and obviously cognizant." (*Id*.) But,"drawn out direct examinations of the government witnesses, while seated and inactive," resulted in his counsel's "lack of conscious awareness of what was going on in court." (*Id*.).[5] Based on his counsel's medical condition where he was "unconscious" during certain times at trial, Donahue maintains that he was *per se* prejudiced pursuant to the Supreme Court's decision in *United States v. Cronic*, 466 U.S. 648, 104 S. Ct. 2039, 80 L. Ed. 2d 657 (1984).

In *Cronic*, the Supreme Court held that a violation of the right to counsel under the Sixth Amendment may be found without a showing of prejudice where "circumstances [exist] that are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified." *Id*. at 658, 104 S. Ct. 2039. Such circumstances include "the complete denial of counsel. The presumption that counsel's assistance is essential requires us to conclude that a trial is unfair if the accused is denied counsel at a critical stage of his trial." *Id*. at 659, 104 S. Ct. 2039. Likewise, "if counsel entirely fails to subject the prosecution's case to meaningful adversarial testing, then there has been a denial of Sixth Amendment rights that makes the adversary process itself presumptively unreliable." *Id*.; *accord United States v. Toliver*, 330 F.3d 607, 613 (3d Cir. 2003) ("if counsel is denied at a critical stage of trial, it is prejudice *per se*, mandating automatic reversal.").

Donahue likens this case to the Ninth Circuit's decision in *Javor v. United States*, 724 F.2d 831 (9th Cir. 1984). There, the Ninth Circuit held that "when an attorney for a criminal defendant sleeps through a substantial portion of the trial, such conduct is inherently prejudicial and thus no separate showing of prejudice is necessary." *Id*. at 833 (citations omitted). The *Javor* court found prejudice "inherent" there "because unconscious or sleeping counsel is equivalent to no counsel at all. The

---

[5] Shortly after trial, Donahue's counsel underwent emergency surgery to save his life. (*See* Doc. 465, 6).

mere physical presence of an attorney does not fulfill the sixth amendment entitlement to the assistance of counsel." *Id.* 834 ("When a defendant's attorney is asleep during a substantial portion of his trial, the defendant has not received the legal assistance necessary to defend his interests at trial.").[6]

Building on the *Javor* line of sleeping counsel cases, Donahue insists that prejudice should be presumed when, as in this case, counsel is in a "medically caused stupor[.]" (Doc. 465, 5). This is so, says Donahue, because any inquiry into prejudice would require "unguided speculation" because "an attorney's absence prejudices a defendant more by what was not done than by what was done." (*Id.*).

These cases do no help to Donahue because prejudice is not presumed on ineffectiveness claims based on counsel's physical or mental health. Indeed, courts have held that the *Strickland* standard "applies to claims based on the illness or incapacity of counsel during trial . . . ." *United States v. Eyman*, 313 F.3d 741, 743 (2d Cir. 2002) (per curiam) (citing *Bellamy v. Cogdell*, 974 F.2d 302, 308 (en banc) (2d Cir. 1992); *Johnson v. Norris*, 207 F.3d 515, 518 (8th Cir. 2000)); *see also United States v. Henges*, 591 F. App'x 287, 287 (5th Cir. 2015) (ineffective assistance claim based on counsel's health problems and medication required a showing of actual prejudice); *Dows v. Wood*, 211 F.3d 480, 485 (9th Cir. 2000) ("The mere fact that counsel may have suffered from a mental illness at the time of trial, however, has never been recognized by the Supreme Court as grounds to automatically presume

---

[6] The Third Circuit has not yet considered whether a presumption of prejudice under *Cronic* is warranted when a defendant's counsel falls asleep during trial. However, as stated last year in *United States v. Nassida*, No. 14-241, 2017 WL 1684299, at *4 (W.D. Pa. May 1, 2017), the five Courts of Appeals to consider this issue have concluded that "prejudice must be presumed when counsel sleeps either through a substantial portion of a defendant's trial or at a critical time during trial." *Id.* (citing *United States v. Ragin*, 820 F.3d 609, 619 (4th Cir. 2016); *Muniz v. Smith*, 647 F.3d 619, 625-26 (6th Cir. 2011); *Burdine v. Johnson*, 262 F.3d 336, 341 (5th Cir. 2001); *Tippins v. Walker*, 77 F.3d 682, 687 (2d Cir. 1996); *Javor*, 724 F.2d at 834).

prejudice."); *Johnson*, 207 F.3d at 518 (rejecting application of *Javor* for ineffective assistance claims based on attorney's mental illness); *Bellamy*, 974 F.2d at 308 ("given the varying effects health problems can have on an individual's ability to function, claims of ineffective assistance based on attorney illness are best suited to the fact-specific prejudice inquiry mandated by *Strickland*."); *Smith v. Ylst*, 826 F.2d 872, 876-77 (9th Cir. 1987) (rejecting ineffective assistance of counsel claim based on counsel's mental incapacity in the absence of prejudice); *United States v. Gallion*, No. 07-39, 2014 WL 2218361, at *4-5 (E.D. Ky. May 27, 2014) (rejecting argument that presumption of prejudice should apply on ineffective claim based on counsel's health condition); *Crimi v. United States*, No. 07-1858, 2008 WL 2949518, at *2 (M.D. Fla. July 28, 2008) ("Courts have held that a defendant claiming his counsel rendered ineffective assistance due to a mental or physical illness, must point to specific errors or omissions which prejudiced his defense."). Thus, "[i]n order to prevail on a claim of ineffective assistance based on counsel's illness, 'a defendant must point to specific errors or omissions in his courtroom behavior and conduct at trial that were a product of the attorney's illness.'" *Samet v. United States*, 559 F. App'x 47, 50 (2d Cir. 2014) (quoting *Eyman*, 313 F.3d at 743); *see also Dawson v. United States*, No. 11-2953, 2013 WL 3746010, at *4 (D.N.J. July 15, 2013) (finding the petitioner failed to identify any explicit errors or deficiencies in counsel's performance relating to claim that counsel's cancer diagnosis deprived him of his right to effective counsel).[7]

---

[7] Relatedly, the Third Circuit recently commented that "alleged substance abuse is not, without more, one of the rare forms of dereliction amounting to the *per se* denial of a defendant's Sixth Amendment right to the effective assistance of counsel." *United States v. Washington*, 869 F.3d 193, 204 (3d Cir. 2017) (citing *Williams v. Trammell*, 782 F.3d 1184, 1200101 (10th Cir. 2015) (analyzing substance abuse ineffectiveness under *Strickland*), *cert. denied*, - - - U.S. - - -, 136 S. Ct. 806, 193 L. Ed. 2d 726 (2016); *Frye v. Lee*, 235 F.3d 897, 907 (4th Cir. 2000) ("[I]n order for an attorney's alcohol addiction to make his assistance constitutionally ineffective, there must be specific instances of deficient performance attributable to alcohol."); *Berry v. King*, 765 F.2d 451, 454 (5th Cir.

Given this, prejudice is not presumed on an ineffective assistance claim based on counsel's physical illness at trial. Rather, *Strickland*'s two prong standard requiring deficient performance and prejudice governs Donahue's claim, and he must point to specific errors or omissions which prejudiced his defense.

Donahue is unable to satisfy either prong of *Strickland*. First, Donahue has not cited to any instances in the record where his counsel's performance fell below an objective standard of reasonableness. Contrary to Donahue's claim that his counsel was "unconscious" at points during the trial, the record is clear that his counsel was alert and attentive during the entirety of the proceedings. Donahue's counsel subjected the Government's case to meaningful adversarial testing, including conducting appropriate cross-examinations of the Government's witnesses. In addition, counsel called numerous witnesses in support of Donahue's defense. And based on my personal knowledge of counsel's performance as having been the presiding judge at trial, I note that counsel was actively engaged in the proceedings at all times. Simply put, Donahue cannot show constitutionally deficient performance under *Strickland*.

Donahue also fails to demonstrate prejudice as required by *Strickland*. More particularly, Donahue has not established that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Again, Donahue fails to point to any errors or omissions by his counsel, and he is likewise unable to identify how his counsel's unidentified errors would have produced a different outcome at trial, particularly in light of the overwhelming evidence of guilt that was presented against him at trial. *See Buehl v. Vaughn*, 166 F.3d 163, 172 (3d Cir.1999) ("It is firmly established that a court must consider the strength of the evidence in deciding whether the *Strickland* prejudice prong has been

---

1985) ("[U]nder *Strickland* the fact that an attorney used drugs is not, *in and of itself*, relevant to an ineffective assistance claim." (emphasis in original))).

satisfied."). Donahue's first ground for habeas relief fails.

**B.     Counsel's Refusal to Subpoena or Call Crucial Trial Witness.**

The second and final basis for habeas relief raised by Donahue is his counsel's failure and/or refusal to subpoena or call Judge Munley as a trial witness. (*See* Doc. 465, 7-24). According to Donahue, had Judge Munley been called as a witness

> the jury would have heard testimony from a U.S. Federal Judge who would have had to admit that he was deceived by the AUSA and the FBI agents repeatedly, that they had committed perjury multiple times about multiple issues, that they had withheld evidence and lied to him about doing so, that he was never told that the FBI case agent had reported to his superior and to the office of the U.S. Attorney that the prosecutor had withheld material relevant evidence from the defense.

(Doc. 473, 10).[8] Donahue further contends that presentation of such testimony would have presented the jury "with visible evidence of the corrupt conduct of the FBI and the Office of the U.S. Attorney who were asking them to believe them and to trust them." (*Id*. at 11). The testimony of a federal judge, Donahue explains, would have been "outcome altering" because if the Government's witnesses "would like to [a] federal judge then they would certainly lie to the jury as well." (*Id*.).

Donahue is not entitled to habeas relief on this claim. Counsel attempted to call Judge Munley as a witness at trial. The trial record reflects this:

> THE COURT: Let me just do one more thing. I want to make it clear on the Judge Munley request. You want to use Judge Munley to impeach Mr. Zubrod's credibility?
>
> MR. RUZZO: Correct.
>
> THE COURT: You want to use him because Mr. Zubrod said on March 4th, shortly after the jury verdict, I met with Judge Munley and gave him the full explanation of everything that had occurred. Right?
>
> MR. RUZZO: Correct.

---

[8]     Donahue's perjury allegations have been written about extensively by this Court and are not detailed at length herein. *See*, *e.g.*, *United States v. Donahue*, No. 11-33, 2015 WL 1815860 (M.D. Pa. Apr. 22, 2015); *United States v. Donahue*, No. 08-221, 2014 WL 2860884 (M.D. Pa. June 23, 2014)

12

> THE COURT: And you're likening the word everything to certain enumerated things that weren't said to Judge Munley, according to Judge Munley.
>
> MR. RUZZO: Correct.
>
> THE COURT: All right. I'm not going to grant you the request for Judge Munley. Number, one that's too attenuated in terms of credibility, because had Mr. Zubrod said I told them A, B, C and D, E and F --
>
> MR. RUZZO: I understand he didn't say that.
>
> THE COURT: -- but Judge Munley said he didn't tell me E and F. That may be different. That didn't happen here. That's number one. It's too attenuated. Number two, it's too late. This could have been done - he could have been subpoenaed earlier, even if he didn't use it. My major reason is I don't think there is anything probative that can come out of it. I just wanted to put that on the record and I am making it clear.

(Doc. 402, 15:16-16:16).[9] In view of the fact that Donahue's counsel attempted to call Judge Munley as a witness at trial but was not permitted, Donahue's ineffectiveness claim on this point fails.

Moreover, Donahue cannot demonstrate either deficient performance or prejudice under *Strickland* based on his counsel's decision not to subpoena Judge Munley. "The decision not to call a witness is a 'virtually unchallengeable' decision of trial strategy." *United States v. Staples*, 410 F.3d 484, 488 (8th Cir. 2005) (citation omitted); *see also United States v. Williams*, 106 F.3d 1362, 1367 (7th Cir. 1997) ("[a] lawyer's decision to call or not to call a witness is a strategic decision generally not subject to review. The Constitution does not oblige counsel to present each and every witness that is suggested to him."); *United States v. Chapman*, 593 F.3d 365, 369 (4th

---

[9] Donahue attempts to contort this passage to indicate that I simply prevented his counsel from submitting an affidavit prepared by his counsel regarding a conversation that his counsel had with Judge Munley a week before trial. (*See* Doc. 473, 5-7). This is not supported by the record, and as the above quoted exchange shows, I did not allow Donahue's counsel to call Judge Munley as a witness because nothing probative could have come from his testimony. (*See* Doc. 402, 16:14-16).

Cir. 2010) ("which witnesses to call is a classic tactical decision left to counsel," and "it remains a decision for counsel even when the client disagrees."). "Where a petitioner challenges counsel's decisions as to which witnesses to call at trial, courts are required not simply to give the attorney the benefit of the doubt, but to affirmatively entertain the range of possible reasons that the petitioner's counsel may have had for proceeding as he did." *Mir v. United States*, No. 14-3627, 2017 WL 498713, at \*7 (D.N.J. Feb. 7, 2017) (citing *Branch v. Sweeney*, 758 F.3d 226, 235 (3d Cir. 2014)); *Moore v. Beard*, 42 F. Supp. 3d 624 (M.D. Pa. 2014) ("Ineffective assistance of counsel claims grounded in an alleged failure to call an important, exculpatory witness demand an additional layer of deference to trial counsel's strategy.")

Donahue insists that the decision not to subpoena Judge Munley was based on his counsel's personal relationship with him rather than for a reason with the best interests of Donahue's defense in mind. But, as I explained at trial, Judge Munley's testimony lacked probative value. (*See* Doc. 402, 15:16-16:16). Counsel cannot be found to have performed deficiently for failing to present a witness that would not have offered any probative testimony.

Further, even if his counsel erred by not issuing a subpoena to Judge Munley, Donahue cannot demonstrate that he suffered prejudice as a result. As stated, the strength of the Government's case is relevant to resolving *Strickland*'s prejudice inquiry. *See Buehl*, 166 F.3d at 172. Unless the strength of the case is considered a "court simply cannot" "determine whether there is a reasonable probability that, but for counsel's errors, the result of the trial would have been different." *Id*. (citations omitted). As such, "a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support." *Strickland*, 466 U.S. at 696, 104 S. Ct. 2052.

Here, the evidence against Donahue was significant. Donahue failed to surrender for service of his sentence on the underlying criminal conviction. As to the

14

other charged offenses, the firearm forming the basis of those crimes was taken from a ski resort in Pennsylvania at the same time Donahue was their with his daughters less than a week before he failed to surrender for service of his federal sentence. *See Donahue*, 681 F. App'x at 174; (*see also* Doc. 394, 12:11-15:14). Any testimony from Judge Munley would not have altered these salient facts, nor would it have negated the overwhelming evidence of Donahue's guilt. *See, e.g.*, *United States v. Moore*, 104 F.3d 377, 391 (D.C. Cir. 1997) (no ineffectiveness in failing to subpoena a witness whose testimony was "tangential at best"). Because the outcome of Donahue's trial would not have been different had Judge Munley been subpoenaed, he is not entitled to habeas relief on this claim for this reason as well.

## IV. Conclusion

For the above stated reasons, Donahue was not denied the effective assistance of counsel. Donahue's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence will thus be denied. Further, in proceedings brought pursuant to 28 U.S.C. § 2255, an applicant cannot appeal to the circuit court unless a certificate of appealability has been issued. Under 28 U.S.C. § 2253(c)(2), a court may not issue a certificate of appealability unless "the applicant has made a substantial showing of the denial of a constitutional right." Restated, a certificate of appealability should not be issued unless "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S. Ct. 1595, 146 L. Ed. 2d 542 (2000). As reasonable jurists would not disagree with the resolution of the instant § 2255 motion, a certificate of appealability will not issue.

An appropriate order follows.

March 21, 2018  /s/ A. Richard Caputo
Date  A. Richard Caputo
United States District Judge