IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA,

v.

JOSEPH P. DONAHUE,

Defendant.

NO: 3:11-CR-00033
(JUDGE MARIANI)

## MEMORANDUM OPINION

Presently before the Court are multiple motions, motion to reduce sentence (Doc. 507), motion/request to expedite his motion to reduce (Doc. 508), motion to reduce (Doc. 513), emergency motion to expedite (Doc. 515), emergency plea/motion for release from custody (Doc. 516), emergency motion for compassionate release from custody (Doc. 521), filed by Defendant, Joseph P. Donahue. Each of these motions requests similar relief, *i.e.*, release from custody to "home confinement" due to Donahue's age, health problems, and vulnerability to COVID-19. For the reasons that follow, Donahue's motion to reduce sentence (Doc. 507), motion to reduce (Doc. 513), and emergency plea/motion for release from custody (Doc. 516) will be denied. Donahue's motion/request to expedite his motion to reduce (Doc. 508) and emergency motion to expedite (Doc. 515) will be denied as moot. Donahue's emergency motion for compassionate release from custody (Doc. 521) is properly construed as a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241,

1

because Donahue is challenging the Board of Prison's ("BOP") execution of his sentence and will be dismissed without prejudice for failure to exhaust his administrative remedies.

## I. FACTUAL BACKGROUND

On January 6, 2010, the Government filed a sixteen-count second superseding indictment against Donahue in this Court. *See United States v. Donahue*, No. 08-CR221 (M.D. Pa. Jan. 6, 2010). That indictment charged Donahue with bank fraud, 18 U.S.C. § 1344; access device fraud (credit card fraud), 18 U.S.C. §§ 1029(a)(2), 1029(b)(1) and 1029(b)(2); false statements to the government, 18 U.S.C. § 1001; and money laundering, 18 U.S.C. § 1956(a)(1)(A). *See id.* A jury convicted Donahue of all counts. *See United States v. Donahue*, 460 F. App'x 141, 142 (3d Cir. 2012). Donahue was sentenced to a term of 121 months of imprisonment. *See id.* Donahue was scheduled to surrender at the Federal Correctional Institution, Fort Dix, New Jersey, to commence serving his sentence on January 4, 2011. *See United States v. Donahue*, No. 11-33, 2014 WL 6388446, at *1 (M.D. Pa. Nov. 14, 2014).

On January 4, 2011, however, Donahue failed to appear. *See id.* On January 20, 2011, Donahue was arrested by the United States Marshals Service in New Mexico. *See id.* During a subsequent search of Donahue's vehicle, a Glock .40 caliber magazine with an extender was discovered in the automobile. *See id.* The bags seized from Donahue's vehicle were also searched, and a Glock semi-automatic pistol was found. *See id.* On July 24, 2012, the Grand Jury returned a four-count first superseding indictment against

Donahue. (*See* Doc. 111). Donahue was charged with (1) knowingly failing to surrender for service of a federal sentence pursuant to a court order, 18 U.S.C. § 3146(a)(2) and (b)(1)(A)(i); (2) knowingly possessing as a felon, in and affecting commerce, a firearm (Glock, Model 27, .40 caliber semi-auto pistol, serial number GTB989) which had been shipped and transported in interstate and foreign commerce, 18 U.S.C. §§ 922(g)(1) and 924(a)(2); (3) being a fugitive from justice and knowingly possessing, in and affecting commerce, a firearm (Glock, Model 27, .40 caliber semi-auto pistol, serial number GRB989) which had been shipped and transported in interstate and foreign commerce, 18 U.S.C. §§ 922(g)(2) and 924(a)(2); and (4) knowingly possessing a stolen firearm (Glock, Model 27, .40 caliber semiauto pistol, serial number GTB989) which had been shipped and transported in interstate and foreign commerce, knowing and having reasonable cause to believe the firearm was stolen, U.S.C. §§ 922(j) and 924(a)(2). (*See id.*) On September 1, 2015, Donahue proceeded to trial on these charges, and a jury convicted him of all counts. (*See* Doc. 378).

Donahue appealed his conviction to the Third Circuit (*see* Doc. 422), and it affirmed Donahue's conviction on direct appeal. *See Donahue*, 460 F. App'x at 145. Donahue then filed a petition to vacate and set aside his conviction pursuant to 28 U.S.C. § 2255, which was also denied. (*See* Docs. 465; 475). The Third Circuit granted in part Donahue's right to appeal the denial of his § 2255 petition, but his appeal was ultimately denied by the Third Circuit in an unpublished opinion. (*See* Docs. 478; 505).

On April 3, 2019, Donahue filed his first motion seeking compassionate release/reduced sentence for extraordinary or compelling circumstances pursuant to 18 U.S.C. § 3582(c)(1)(A). (*See* Doc. 493). The Court dismissed this motion because Donahue failed to exhaust his administrative remedies. (*See* Doc. 496, at 2). In deciding Donahue's motion for reconsideration of this decision (*see* Doc. 500), the Court extensively reviewed his medical history. The Court stated:

> Donahue explains that as a result of surgery and chemoradiation to treat cancer in 2016, he has difficulty swallowing, has dry mouth, is unable to sleep, and suffers from damaged taste buds. (*See* Doc. 493, 4-5). These conditions, says Donahue, combined with "other prison environment factors have impacted and continue to impact [his] immune system and its ability to combat disease and diminishes his life expectancy." (*Id.* at 6). To support his position, Donahue points to medical reports from Dr. Onyekachi Ogbonna and Dr. Lisa Ayers. (*See* Doc. 493, Exs. "3"-"4").
>
> According to Dr. Ogbonna's February 6, 2019 record, he noted that Donahue had a "[s]urveillance PET/CT [that] showed no evidence of recurrence." (Doc. 493, Ex. "4""). Dr. Ogbonna also indicated that Donahue was seen by an ENT in December 2018 and that "flexible laryngoscopy was unremarkable." (*Id.*) Dr. Ogbonna indicated that Donahue presented with reports of "chronic dry mouth and altered taste with some dysphagia since completing radiation therapy." (*Id.*). Dr. Ogbonna further observed that Donahue's "labs were reviewed and stable; and his exam is unremarkable. I will continue routine surveillance with exam, labs and PET/CT imaging every 6 months through 7/2021. Dry mouth with altered taste and reported dysphagia post radiation: Continue oral supplements. Please increase nutritional supplements with Ensure to 4 cans daily." (*Id.*).
>
> Donahue was also seen by Dr. Ayers on December 27, 2018. (See Doc. 493, Ex. "4"). Like Dr. Obgonna, Dr. Ayers recommended that Donahue be provided 4 cans of Ensure daily. (*See id.*). Dr. Ayers also indicated that

> "[n]o evidence of disease [was] noted on the nasopharyngeal laryngoscopy today." (*Id.*).

(Doc. 504, at 4-5). Accordingly, the Court did not find "that Donahue's current medical condition constitute[d] an extraordinary or compelling reason to warrant a compassionate release" and denied his motion for reconsideration. (Doc. 504, at 5).

Donahue then filed another motion for compassionate release/reduced sentence, providing the same medical history, but arguing that he should be released to home confinement because he is now sixty-five (65) years of age and continues to suffer from health ailments. (*See* Doc. 507). He requested to expedite (*see* Doc. 508), supplemented this motion twice (*see* Docs. 510; 512), and filed another motion for compassionate release/reduced sentence (*see* Doc. 513), reiterating substantially the same facts and argument in each filing but also including some "new evidence" of the BOP's alleged failures to effectively feed him (*see* Docs. 510; 512; 513). The Government filed a response brief. (*See* Doc. 509). Donahue then filed a request and a motion to expedite, arguing that his motions for compassionate release/reduced sentence due to his age and medical issues should be granted because he is highly vulnerable to contracting COVID-19 in prison. (*See* Docs. 514; 515). Donahue proceeded to file a motion for compassionate release/reduced sentence (*see* Doc. 516) and one supplement to this motion (*see* Doc. 519), again alleging that he should be released to home confinement due to his high risk of contracting COVID-19 in prison. The Government filed a response brief. (*See* Doc. 517). Finally, Donahue filed a motion alleging that the BOP failed to release him to home confinement in accordance

5

with its home confinement release program in response to Attorney General Barr's memoranda regarding inmates "at-risk" of contracting COVID-19 in prison. (*See* Doc. 521). The Government filed a response brief (*see* Doc. 522), and Donahue filed a reply (*see* Doc. 523).

## II. DISCUSSION

Donahue's motions are based on three main arguments: (1) he should be released to home confinement under § 3582(c)(1)(A) due to his age and medical difficulties, (2) he should be released to home confinement under § 3582(c)(1)(A) because his age and medical difficulties make him more vulnerable to contracting COVID-19 in prison, (3) the BOP failed to properly release him to home confinement in accordance with its home confinement release program for inmates' "at-risk" of contracting COVID-19 in prison. Donahue's motions alleging that he should be released to home confinement due to his age and medical difficulties will be denied, because Donahue's medical circumstances do not warrant compassionate release. (*See* Docs. 507; 513). Donahue's motion alleging that he should be released to home confinement because his age and medical ailments make him more vulnerable to contracting COVID-19 in prison will be denied, because Donahue has not exhausted the administrative remedies available to him on this claim. (*See* Doc. 516). Donahue's motion alleging that the BOP failed to release him to home confinement in accordance with its home confinement release program for inmates' "at-risk" of contracting

6

COVID-19 in prison will be dismissed without prejudice for failure to exhaust administrative remedies on this claim. (*See* Doc. 521).

Section 18 U.S.C. § 3582(c)(1)(A)(i-ii), provides:

> The court may not modify a term of imprisonment once it has been imposed except that [] in any case [] the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), . . . if it finds that– (i) extraordinary and compelling reasons warrant such a reduction; or (ii) the defendant is at least 70 years of age, . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

A. <u>Donahue's Motions for Compassionate Release/Reduced Sentence Due to His Age and Medical Difficulties</u>

In pursuing his motions for compassionate release/reduced sentence due to his age of sixty-five (65) years and medical ailments (*see* Docs. 507; 513), Donahue submitted a request for compassionate release/reduction in sentence to the BOP. (*See* Doc. 509, at 7). The BOP reviewed the request and denied it, because Donahue did

> not meet the criteria of: 'experiencing deteriorating mental or physical health that substantially diminishes their ability to function in a correctional facility.' Inmate Donahue does not require assistance to perform his [activities of daily living]. He continues to function at a reasonably high level at [] Lewisburg.

7

(*Id.* at 8). The clinical director at USP Lewisburg, the federal prison where Donahue is housed, Dr. Andrew Edinger, examined Donahue and reported that "his health has not significantly changed" from the time of his examination ten months ago when he requested a reduction in sentence based on a "debilitated medical condition." (*Id.* at 9). Dr. Edinger noted that while Donahue "does require special diet considerations to be able to eat and maintain nutrition," "his condition is not terminal" and "[h]e does not require assistance to perform [activities of daily life]." (*Id.*).

Here, as was previously noted in the response to Donahue's first compassionate release/reduced sentence motion (*see* Doc. 504, at 5), this Court is still sympathetic to Donahue's medical condition,[1] including his continued difficulty swallowing, dry mouth condition as the result of his chemoradiation treatment, and trouble sleeping. (*See* Doc. 507, at 12-13). However, without any evidence that his condition has deteriorated since the time of his first compassionate release motion (*see* Doc. 504), Donahue's age of sixty-five (65) years old and his current medical ailments do not warrant release under § 3582(c)(1)(A)(i-ii). Thus, the Court will deny Donahue's motions for compassionate release/reduced sentence due to his age of sixty-five (65) years and continued medical difficulties. (Docs. 507; 513).

---

[1] Donahue also alleges that an "ongoing fluxuation" in the amount and type of food thickener that the BOP provides him is jeopardizing his ability to gain the nutritional benefits that he requires for adequate nourishment. (Docs. 510, at 3-4 and 513, at 1-3, 11-12). This alleged nutritional inadequacy does not warrant compassionate release considering Dr. Edinger's assessment of Donahue's health.

8

### B. Donahue's Motion for Compassionate Release/Reduced Sentence Due to His Age, Health, and the COVID-19 Pandemic

Donahue also filed a motion for compassionate release/reduced sentence based on his vulnerability to COVID-19. (*See* Doc. 516). Donahue explains that his release is warranted because (1) he is highly vulnerable to contracting the infection due to his age group and existing medical complications, and (2) the BOP is not equipped to protect him from the risks COVID-19 poses to his health. (Doc. 516, at 4-8). While the Court is mindful that Donahue does fall under the category of persons that is most susceptible to the virus (*see* Docs. 514, at 3-4; 516, at 2), Donahue has failed to exhaust his administrative remedies on this claim.

> Instead of exhausting his administrative remedies, Donahue states that
>> as the COVID-19 pandemic emerged, he filed an Emergency Supplement with the Court [(*see* Doc. 514)] conveying the fact that the pandemic and the threat of spread of the virus throughout the prison system posed an extraordinary and compelling basis for the grant of an already well-supported motion based on the fact that Donahue met the criteria under the Elderly Inmate with Medical Conditions component of the compassionate release program.

(Doc. 516, at 4). Donahue, however, cannot first raise the issue of his COVID-19 susceptibility to the Court, as an additional reason to grant his motion for compassionate release/reduced sentence due to his age and health, without first bringing his concerns about COVID-19 to the BOP.[2] *See United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020)

---

[2] Donahue concedes that he has not brought his health concerns regarding COVID-19 to the BOP. Instead, he avers that his COVID-19 argument "does not constitute a modification of his [motion for compassionate release/reduced sentence due to his age and medical ailments] and does not require BOP review – if so

9

("Given BOP's shared desire for a safe and healthy prison environment, we conclude that strict compliance with § 3582(c)(1)(A)'s exhaustion requirement takes on added—and critical—importance."). Thus, the Court will deny Donahue's motion for compassionate release/reduced sentence based on his vulnerability to COVID-19 for failure to exhaust his administrative remedies with the BOP. (Doc. 516).

### C. Donahue's Motion for Compassionate Release/Reduced Sentence Regarding the BOP's Home Confinement Release Program for "At-Risk" Inmates

Donahue's latest motion, emergency motion for compassionate release from custody (see Doc. 521), was filed in response to the BOP's decision that he is not eligible to be released to home confinement under the BOP's program regarding the release of "at-risk" inmates, which was organized in response to Attorney General Barr's memoranda on COVID-19. (Doc. 521, at 13-21; 521-1, at 14-19; Doc. 523, at 5-8, 14-16). These memoranda called for the creation of a home release program to protect vulnerable inmates from COVID-19 and established a non-exhaustive list of criteria for the BOP to consider when reviewing each inmate's release eligibility. See Memorandum for Director of Bureau Prisons, William Barr, Attorney General, Prioritization of Home Confinement as Appropriate in Response to the COVID-19 Pandemic (Mar. 26, 2020); Memorandum for Director of Bureau Prisons, William Barr, Attorney General, Increasing Use of Home Confinement at

---

considered [he] withdraws that [a]dditional issue" as he does not need his susceptibility to COVID-19 "to justify what is already [an] extremely well supported motion [f]or grant of relief under the ELDERLY INMATES WITH MEDICAL CONDITIONS component of § 3582." (Doc. 518, at 6-7) (emphasis in original).

Institutions Most Affected by COVID-19 (April 3, 2020). A BOP update on the implementation of these memoranda provided that "[c]ase management staff are urgently reviewing all inmates to determine which ones meet the criteria established by the Attorney General on March 26, 2020 and April 3, 2020." Update on COVID-19 and Home Confinement, Federal Bureau of Prisons (April 5, 2020), *at* https://www.bop.gov/resources/news/20200405_covid19_home_confinement.jsp. The list of criteria for consideration provides in relevant part: "[t]he inmate's crime of conviction and assessment of the danger posed by the inmate to the community. . . [S]erious offenses should weigh more heavily against consideration for home detention." *See* Memorandum for Director of Bureau Prisons, William Barr, Attorney General, Prioritization of Home Confinement as Appropriate in Response to the COVID-19 Pandemic (Mar. 26, 2020), at 2. The Government explains, in its response to Donahue's latest motion, that Donahue did not qualify for release to home confinement under this program due to his offense of conviction, failure to surrender for service of his sentence and possession of a firearm by a convicted felon, and history of convictions of violence, which is detailed in his presentence investigative report. (Doc. 522, at 7).

Because Donahue is challenging the BOP's execution of his sentence, his latest motion (*see* Doc. 521) is properly construed as a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. "Federal prisoners are ordinarily required to exhaust their administrative remedies before petitioning for a writ of habeas corpus pursuant to § 2241."

*Moscato v. Fed. Bureau of Prisons*, 98 F.3d 757, 760 (3d Cir. 1996) (collecting cases). "If a petitioner has failed to exhaust his administrative remedies prior to filing a § 2241 petition, the District Court may in its discretion either excuse the faulty exhaustion and reach the merits, or require the petitioner to exhaust his administrative remedies before proceeding in court." *Ridley v. Smith*, 179 F. App'x 109, 111 (3d Cir. 2006) (quotations omitted). There is no evidence that Donahue has exhausted his administrative remedies on the BOP's alleged failure to release him under its program for the release of "at-risk" inmates, and an administrative remedy is available for him to do so. *See* 28 C.F.R. § 542.10 (stating that the administrative remedy program allows inmates "to seek formal review of an issue relating to any aspect of his/her own confinement"). Moreover, no cases of COVID-19 have been reported at USP Lewisburg, and Donahue even concedes that the BOP transferred him and other particularly vulnerable inmates to a special quarantined housing unit. (Doc. 522, at 12-13; Doc. 521, at 12). Thus, the Court will dismiss Donahue's motion for compassionate release from custody (*see* Doc. 521) without prejudice and allow him to utilize the BOP's administrative remedy program before proceeding on this claim in federal court.

    A separate order follows.

                                                Robert D. Mariani
                                                United States District Judge